UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JERRY DONALD SHAKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00034-JMS-DLP |
| | ) | |
| DEE SMILEY, | ) | |
| SUSAN STREETER, | ) | |
| | ) | |
| Defendants. | ) | |

**Entry Granting Defendants' Unopposed Motions for Summary Judgment**

Plaintiff Jerry Donald Shake filed this civil rights action based on circumstances that arose while he was a pretrial detainee at the Vigo County Jail. Mr. Shake alleges that defendants Dee Smiley and Susan Streeter were deliberately indifferent to his skin condition (an allergic reaction and scabies) in violation of his constitutional rights.

Defendants now seek resolution of the claims alleged against them through summary judgment. They argue that Mr. Shake has failed to produce any evidence that his treatment for an allergic reaction or scabies violated his Eighth or Fourteenth Amendment rights. For the reasons explained below, defendant Susan Streeter's motion for summary judgment filed October 31, 2017, and defendant Dee Smiley's motion for summary judgment filed November 15, 2017, dkts [29] and [35], are **granted.**

**I. Standard of Review**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011). "The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

In this case, Defendants have met that burden through their unopposed motions for summary judgment. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."). By not responding to the motions for summary judgment, Mr. Shake conceded to Defendants' version of the facts. *Brasic v. Heinemann's Inc.,* 121 F.3d 281, 286 (7th Cir. 1997). This is the result of Local Rule 56-1, of which Mr. Shake was notified. See dkt. 29. This does not alter the standard for assessing a Rule 56 motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

## II. Undisputed Facts

Nurse Streeter is a Registered Nurse in the State of Indiana, who has almost twenty years of nursing experience. She is a full-time employee for Quality Correctional Care, LLC, and works as a nurse at the Vigo County Jail. She provides nursing care and services to the inmates at the jail.

Ms. Smiley is the Jail Matron. She is responsible for the review and processing of all inmate grievances. Inmate grievances are made through a Vigo County Security Inmate General Action Request Form (Action Form). The Action Forms related to medical care are sent to the medical department consistent with Jail policy. Ms. Smiley was not involved in Mr. Shake's actual medical treatment. Her role was to review and process the Action Forms Mr. Shake submitted. Ms. Smiley responded to each Action Form and request for medical treatment made by Mr. Shake.

Quentin Emerson, M.D., is the physician at the Vigo County Jail. He visits the Vigo County Jail every Friday and is on-call twenty-four hours a day to answer any medical questions posed by the nursing staff.

On or about June 18, 2016, Mr. Shake was arrested in Terre Haute and incarcerated as a pre-trial detainee in the Vigo County Jail. He remained at the Vigo County Jail for six months. While incarcerated at the Vigo County Jail, Mr. Shake experienced a rash and hives.

On August 17, 2016, Mr. Shake complained of an itchy rash. Two days later, he met with Dr. Emerson who diagnosed Mr. Shake with an allergic reaction and prescribed Prednisone for an eight-day period. This was an effective treatment and temporarily resolved Mr. Shake's rash.

On September 11, 2016, Mr. Shake asked for more Prednisone and Benadryl because he continued to experience discomfort with his rash. The following day, Nurse Streeter examined Mr. Shake. She noted he had redness and raised bumps in the webbing of his hands and feet, and he

also had a rash in his groin area and lower abdomen. Nurse Streeter determined he probably had scabies. She notified Dr. Emerson, who immediately prescribed Permethrin cream to treat it.

Scabies is an itchy skin condition caused by a tiny burrowing mite. It is a contagious condition and can spread quickly through close physical contact to others with scabies. It is not a life-threatening illness. Scabies is easily treated with Permethrin cream, which kills the mites and their eggs. An infected person applies this medication all over his or her body. Although the mites are killed, an infected person can experience itching for several weeks thereafter.

On September 12, 2016, Mr. Shake received the Permethrin cream to apply to his body and extremities. Mr. Shake understood this was a one-time treatment to eliminate the scabies. The following day, Mr. Shake took a shower to remove the Permethrin cream. He also received new clothes and linens.

On September 17, 2016, Mr. Shake submitted an Action Form complaining that the scabies treatment was not effective, and he was mad that he had to pay for the medical care. The Action Form was sent to the medical department. In response to Mr. Shake's complaint, Nurse Streeter noted that he received the medicated cream four days earlier in the afternoon on September 12, 2016. She explained that it takes time for the medicated cream to work and the rash to disappear. She documented Mr. Shake took a shower on September 13, and received new clothes and bed linens. If the condition did not improve, Nurse Streeter agreed to ask the physician to prescribe another Permethrin cream dose. That same day, Mr. Shake filed an Action Form with the jail commander about the alleged poor medical care and treatment for his scabies.

On September 23, 2016, the Action Form was addressed with the medical staff. Dr. Emerson examined Mr. Shake that day. He ordered the Permethrin cream treatment again. Shake received a second Permethrin cream treatment the next day.

On October 3, 2016, Mr. Shake filed another Action Form. He admitted the rash had gone away, but he still itched. The Action Form was forwarded to the medical department. Nurse Streeter responded that medical would examine Mr. Shake later that same day.

On October 5, 2016, Mr. Shake filed another Action Form with the jail commander because he never saw Dr. Emerson on October 3. Jail Matron Smiley sent the Action Form to the medical department. Nurse Streeter arranged for Mr. Shake to see Dr. Emerson on October 7, when Dr. Emerson was next at the Jail. Emerson saw Mr. Shake on October 7, and prescribed hydroxyzine (an antihistamine to treat itching) for Mr. Shake to take for ten days. He also ordered Stomectol, another anti-parasite medication, and Permethrin cream again.

November 14, 2016 was the next time Mr. Shake saw Nurse Streeter for an evaluation of his scabies. Nurse Streeter evaluated Mr. Shake in the medical office. She determined Mr. Shake did not have any bumps or a rash on his body. Mr. Shake's scabies were gone. She noted she would continue to monitor for any changes.

Mr. Shake agreed Nurse Streeter treated his scabies and never refused him treatment. Every medical request form filed by Mr. Shake was addressed by the medical staff.

### III. Discussion

This action is brought pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state

law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred. *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (*citing Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "[T]he first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Constitutional claims are to be addressed under the most applicable provision. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005).

In this case the Eighth Amendment provides the best guidance. "[A]lthough civil rights claims of pretrial detainees arise under the Fourteenth Amendment, we begin by evaluating those claims using the Eighth Amendment standards that apply to prisons." *Courtney v. Devore*, 595 F. App'x 618, 619 (7th Cir. 2014). This is because the due process rights of a pre-trial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner, *Revere v. Massachusetts General Hosp.,* 463 U.S. 239 (1983); *Hall v. Ryan,* 957 F.2d 402, 404 (7th Cir. 1992), and an act or practice that violates the Eighth Amendment also violates the Fourteenth Amendment rights of a pre-trial detainee, *Bell v. Wolfish,* 441 U.S. 520, 536 n.16 (1979); *Martin v. Tyson,* 845 F.2d 1451, 1456 (7th Cir. 1988). *See also Board v. Farnham,* 394 F.3d 469, 478 (7th Cir. 2005) (stating that it is convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) without differentiation).

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment deliberate

indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014).

"[C]onduct is 'deliberately indifferent' when the official has acted in an intentional or criminally reckless manner, *i.e.*, 'the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so.'" *Board*, 394 F.3d at 478 (*quoting Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998) (internal quotations omitted)). "To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). *See Plummer v. Wexford Health Sources, Inc.*, 609 Fed. Appx. 861, 2015 WL 4461297, *2 (7th Cir. 2015) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments").

For purposes of resolving the motions for summary judgment, the defendants do not dispute that Mr. Shake's allergic rash and scabies constitute a serious medical condition. Instead, argue that they were not deliberately indifferent to Mr. Shake's skin conditions.

**A. Nurse Streeter**

Nurse Streeter argues that she is entitled to summary judgment because there is no evidence that she acted with deliberate indifference in treating any of Mr. Shake's skin conditions.

It is undisputed that Nurse Streeter successfully cared for and treated Mr. Shake's skin condition. She properly treated him by identifying the skin conditions; collaborating with Dr. Emerson to obtain the treatment for Mr. Shake; complying with the physician's orders; and providing Mr. Shake with medications. She acted affirmatively and timely to address Mr. Shake's health concerns. There is no evidence of misconduct on her part.

Under these circumstances, Mr. Shake's Eighth and Fourteenth Amendment rights were not violated. For this reason, Nurse Streeter is entitled to judgment as a matter of law.

**B. Ms. Smiley**

Ms. Smiley argues that she is entitled to summary judgment because there is no evidence that she acted with deliberate indifference towards Mr. Shake's skin conditions.

The undisputed record reflects that Ms. Smiley timely and appropriately responded to Mr. Shake's Action Forms and requests for medical care. Ms. Smiley forwarded each of Mr. Shake's Action Forms to the Medical department for handling and treatment. Ms. Smiley's responses to Mr. Shake's requests were reasonable and facilitated his ability to obtain appropriate medical treatment. Ms. Smiley did not place Mr. Shake's health or safety at risk but assisted in the treatment and resolution of his medical conditions.

Under these circumstances, Ms. Smiley did not participate in any misconduct. Her actions were appropriate and she is not liable to Mr. Shake for violating his Eighth or Fourteenth Amendment rights. Ms. Smiley is entitled to judgment in her favor as a matter of law.

### IV. Conclusion

It has been explained that "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 118 S.Ct. 1584, 1598 (1998).

This is a vital role in the management of court dockets, in the delivery of justice to individual litigants, and in meeting society's expectations that a system of justice operate effectively. Indeed, "it is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained," and in such cases, summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir. 1983).

Mr. Shake has not identified a genuine issue of material fact as to his claims in this case and Defendants are entitled to judgment as a matter of law. Accordingly, defendant Susan Streeter's motion for summary judgment filed October 31, 2017, and defendant Dee Smiley's motion for summary judgment filed November 15, 2017, dkts [29] and [35], are **granted.**

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 3/21/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

JERRY DONALD SHAKE
179271
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
1946 West U.S. Hwy 40
Greencastle, IN 46135

David P. Friedrich
WILKINSON GOELLER MODESITT WILKINSON AND DRUMMY
dpfriedrich@wilkinsonlaw.com

Tyler Scott Lemen
DREWRY SIMMONS VORNEHM, LLP (Carmel)
tlemen@dsvlaw.com

Janet A. McSharar
DREWRY SIMMONS VORNEHM, LLP
jmcsharar@DSVlaw.com